**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

James M. Moten,

        Plaintiff,

v.

United States Air Force, Board for
Correction of Military Records,

        Defendant.

No. CV-18-02179-PHX-DJH

**ORDER**

This matter is before the Court on Cross-Motions for Summary Judgment. On August 2, 2018, Plaintiff James M. Moten filed a Motion for Summary Judgment (Doc. 10) along with a Statement of Facts (Doc. 11) asking the Court to set aside a decision of the United States Air Force Board for Correction of Military Records ("Board") pursuant to 5 U.S.C. § 706. Defendant Board filed a Response to Plaintiff's Motion and a Cross-Motion for Summary Judgment (Doc. 25) along with a Controverting and Supplemental Statement of Facts. (Doc. 26). Mr. Moten filed a Reply to the Board's Response (Doc. 27), and the Board filed a Reply in Support of Its Cross-Motion for Summary Judgment. (Doc. 28). Mr. Moten then filed a Reply to the Board's Reply.[1] (Doc. 29).

## I.    Background

Mr. Moten enlisted in the military over 50 years ago and served on active duty in the United States Air Force from June 16, 1966 to April 26, 1974. (Doc. 22-2 at 16-17).

---

[1] Neither the local rules of the District of Arizona nor Fed. R. Civ. P. 7 authorize the filing of a surreply without first being granted leave of the Court. Because this surreply was filed without leave of the Court, the Court will strike it from the record.

His enlistment was divided into two tours: the first from June 16, 1966 to April 28, 1970; the second from April 28, 1970 to April 26, 1974. (*Id.*) At the end of each of these tours, Mr. Moten was honorably discharged and issued a DD 214, both of which he signed.[2] (*Id.*)

During Mr. Moten's second tour, he was selected to serve in the United States Air Force 57th Fighter-Interceptor Squadron aboard Keflavik Naval Station in Iceland. (Doc. 11 at 30-32). While serving in Iceland, Mr. Moten was assigned to the Ground Defense Force as part of Third Rifle Platoon, Company "B." (Doc. 11 at 33). The record shows that Mr. Moten was in Iceland from September 13, 1971 to January 9, 1972, at which time he was granted thirty days emergency leave. (Doc. 11 at 32, 35). His DD 214 reflects this period of "FOREIGN AND/OR SEA SERVICE" only by denoting "01" year of service in Block 18f but does not specify further where or with what unit Mr. Moten was stationed. (Doc. 11 at 16).

On November 10, 2013, Mr. Moten applied to the Board for a correction of his military record. (Doc. 22-1 at 69). He requested that his DD 214 be corrected to indicate in Block 27 his "service on Ground Defense Forces Iceland with the Marines from October 1971 through March 1972." (*Id.*) On September 19, 2014, the Board denied Mr. Moten's request, stating that it was not timely filed and "it would not be in the interest of justice to excuse [the] failure to submit . . . in a timely manner." (Doc. 11 at 10).

In rendering its decision, the Board considered the recommendation of the Air Force Directorate of Personnel Services which found "no errors in the processing of his DD214" because "DoDI 1336.01 and governing Air Force instructions and policy at the time the applicant served did not authorize the listing of duty history or mention of deployments . . . on a DD214." (Doc. 11 at 9). In accordance with 10 U.S.C. § 1552(b), the Board considered the evidence of record and concluded that Mr. Moten's request was untimely, that he failed to show a sufficient reason for the delay, and that the record did not raise issues of error or injustice requiring resolution on the merits. (Doc. 11 at 13). Although the Board denied the request as untimely, it still evaluated Mr. Moten's underlying claims

---

[2] Only the 1974 DD 214 (Doc. 11 at 16) is at issue here.

of error in preparation. (*Id.*)

Mr. Moten submitted two similar requests for correction of his DD 214 on November 7, 2014, (Doc. 22-1 at 27) and October 28, 2015 (Doc. 22-1 at 4); in both instances the Board informed him that without new relevant information, the application did not meet the criteria for reconsideration. (Doc. 22-1 at 3, 26).

## II.    Procedure

### A.    Standard of Judicial Review as to Military Board Decisions

The Board may correct a military record if the "concerned files a request for the correction within three years after discovering the error or injustice," but the Board "may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice." 10 U.S.C. § 1552(b) (2018). "[I]n assessing whether the interest of justice supports a waiver of the statute of limitations [the Board] should analyze both the reasons for the delay and the potential merits of the claim based on a cursory review." *Allen v. Card*, 799 F. Supp. 158, 164 (D.D.C. 1992). "The longer the delay has been and the weaker the reasons for the delay are, the more compelling the merits would need to be to justify a full review." *Id.* at 164-65; *compare Gilbert v. Wilson*, 292 F. Supp. 3d. 426 (D.D.C. 2018) (refusing to remand a Board decision not to waive the three-year limitation where former Air Force officers sought retrospective promotions), *with Guerrero v. Stone*, 970 F.2d 626 (9th Cir. 1992) (finding it to be "in the interest of justice to waive the three-year limitations" on application for correction where a twice-captured World War II veteran had his Army status completely revoked and restored twice before being revoked a third and final time).

As the Board is an "agency" within the meaning of the APA, "Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (citations omitted); *see e.g.*, *Guerrero*, 970 F.2d at 628; *Burns v. Marsh*, 820 F.2d 1108, 1110 (9th Cir. 1987). "In reviewing whether an agency decision is arbitrary or capricious, we 'ensure that the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made.'" *Ctr. for Biological Diversity v. Zinke*,

900 F. 3d 1053, 1067 (9th. Cir 2018) (quoting *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1023 (9th Cir. 2011)). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

This highly deferential standard mandates that an agency's decision be set aside "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before [it] or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (citations and internal quotations omitted) (*overruled on other grounds by American Trucking Ass'ns Inc. v City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009)).

## B.  Summary Judgment Legal Standard

A court shall grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating summary judgment motions, a court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of identifying materials in the record to show the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries its burden, then the non-moving party must establish the existence of a genuine dispute as to a material fact beyond any "metaphysical doubt" that the non-movant may have. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). A genuine issue for trial cannot be based solely upon subjective belief. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

A dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson*, 477 U.S., at 248. However, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Material facts are those identified in substantive law. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## III. Discussion

### A. Timeliness of Mr. Moten's Application for Correction

After a review of the evidence of record, the Board found that Mr. Moten filed his application for correction beyond the statutorily allowed three years from the date of discovery. (Doc. 11 at 13). The Board reached this conclusion on the basis that the DD 214 contained all relevant information—as well as the lack of information now disputed—on a single page which Mr. Moten signed upon its receipt, 44 years ago. (Doc. 26 at 3). Although Mr. Moten contends that the "[s]igning is only an acknowledgment of receipt" and does not meet the statutory requirement of discovery of the error, he later acknowledges that the signature does act as "a confirmation . . . for the basic information" such as name and social security number. (Doc. 27 at 15-16).

Mr. Moten presents no reasons for his delay in application for correction, but now submits that he discovered the error in 2013 during an interaction with the Motor Vehicle Department; however, the Court need not substitute its own judgment regarding when Mr. Moten discovered the error[3] because the Board's determination that the error was discovered upon review and signing "articulate[s] a rational connection between the facts found and the choices made." *Greater Yellowstone Coal., Inc.*, 665 F.3d at 1023. Therefore, the Board's decision on the timeliness of Mr. Moten's application was neither arbitrary nor capricious.

### B. Excusal of Timeliness in the Interest of Justice

Even though the Board concluded Mr. Moten's application was untimely, it

---

[3] A brief prepared on behalf of Mr. Moten by his attorney at the time, Donald W. Gordon, for submission to the Board concedes that "the Applicant's request is clearly beyond the three-year window for timely review." (Doc. 11 at 49).

nonetheless evaluated whether it would "be in the interest of justice" to excuse such untimely filing in accordance with 10 U.S.C. § 1552(b). Because "DoDI 1336.01[4] . . . and governing Air Force instructions and policy at the time the applicant served did not authorize the listing of duty history or mention of deployments/service on foreign soil on the DD Form 214," the Board could not "conclude it would be in the interest of justice to excuse" the untimeliness of the application and add the specific, requested duty history to Mr. Moten's DD 214. (Doc. 11 at 12-13).

In arguing that it would be in the interest of justice to excuse his untimely application, Mr. Moten regularly references the injustice suffered by African-American servicemembers serving during the 1960s, 1970s, and specifically in Iceland. (*E.g.*, Doc. 10 at 2; Doc. 11 at 1-3, 24, 27-29). Mr. Moten mistakes the "interest of justice" at issue as pertaining to the racial injustices he suffered while serving in Iceland; however, 10 U.S.C. § 1552(b) refers instead to an injustice which would be created by a refusal to modify his DD 214. The Court does not dispute Mr. Moten's allegations of injustices related to his military service in Iceland, but that is not at issue in this matter.

Alternatively, Mr. Moten contends that the Board "uses the wrong terminology 'NOT AUTHORIZED' regarding indicating Foreign Service" because AFM (Air Force Manual) 35-6 which governed preparation of separation documents "says nothing regarding listing foreign service." (Doc. 27 at 2) (emphasis in original). The silence of AFM 35-6 regarding the listing of foreign service—as agreed to by both parties—supports the fact that it does not authorize the listing now sought by Mr. Moten. AFM 35-6 states that it "reflects the *authorized entries* for each item of DD Form 214 for members of the Regular Air Force." (Doc. 26-1, Ex. A) (emphasis added). AFM 35-6 authorizes only three types of entries within Block 27, Remarks, none of which includes the listing of foreign service. (*Id.*) Furthermore, AFM 35-6 explicitly orders "MAKE NO OTHER

---

[4] It should be noted that much of Mr. Moten's argument relies on the wording present in the January 6, 1989 version of DoDI 1336.1 and not DoDI 1336.1, December 14, 1978 which was in effect at the time of the preparation of his DD 214. (Doc. 11 at 1-3, 6, 18). The 1989 version of the instruction explicitly cancels the 1978 version. (*Id.* at 18). All references made to DoDI 1336.01 by the Court refer to the 1978 version.

ENTRIES UNLESS AUTHORIZED BY HQ USAF." (*Id.*) (emphasis in original).

Due to the thirty-nine-year delay and the lack of reasons given for this delay, the merits of Mr. Moten's application needed to be compelling to justify a full review of the Board. *See Allen*, 799 F. Supp. at 164-65. However, Mr. Moten's requested correction runs contrary to Air Force policy in effect at the time of his service. Therefore, the Board's decision to deny Mr. Moten's application was neither arbitrary nor capricious.

Accordingly,

**IT IS ORDERED** that the Board's Cross-Motion for Summary Judgment (Doc. 25) is **granted**.

**IT IS FURTHER ORDERED** that Mr. Moten's Motion for Summary Judgment (Doc. 10) is **denied**.

**IT IS FURTHER ORDERED** that Mr. Moten's Surreply (Doc. 29) is **stricken from the record**.

**IT IS FINALLY ORDERED** that the Clerk of Court shall kindly enter judgment accordingly and terminate this matter.

Dated this 28th day of January, 2019.

Honorable Diane J. Humetewa
United States District Judge